Your Honor, it may please the Court, Robert Coleman representing Quantum Technology. It's tough to follow anything about Ken Kesey with a business dispute regarding dollar law, but here we are. As I see it, there are nine issues that I need to discuss in ten minutes. Before you start on your nine issues, I still had some concerns about whether we have jurisdiction here. So in the order that you submitted, Mr. Dickman claimed he was a resident of California but didn't reference his citizenship. And Quantum said that the LPs that are participants are family trusts, but doesn't say the citizenship of each of the trustees, which is what is relevant for the trust. And third, it's based on information and belief where one would think that the citizenship would be something within Quantum's knowledge. So how can we be assured that we do have diversity jurisdiction over this case, given these defects? Can you address those? Yes, Your Honor, and that was my first issue. Good, then we're in sync. Yes. The trusts are citizens of the states that Mr. Dickman says they are. So each of the trustees, and it's been confirmed, and this is actually confirmed on information and belief that the trustees of each trust are all citizens of the state that's indicated. Has that been confirmed? This is based on Mr. Dickman's documentation from the trust. That's correct. That the trustees, not the trust, but the trustees each. Yes, Your Honor, that is my understanding. Then with respect to Mr. Dickman's citizenship, he's never lived anyplace but California during the relevant time, so that's where he's always been domiciled. That's his citizenship. So he would be the general partner of the limited partnership. He said resident, but he meant citizen? Yes, Your Honor, if there's a distinction, I'm not sure. There is a distinction, yes. Okay, he's never, that's his domicile, that's where he lives, is in San Jose, California, Your Honor, at all relevant times and for many years. Then with respect to the law firm, the California law firm, which is itself a limited partnership, there was not time to get a declaration from each and every partner in the law firm. So what Mr. Dickman did was talk to the administrator and find out that each and every partner, individual person, who is a member of that law firm, is a California citizen. And that's what the declaration is at least intended to state. If it doesn't state that with sufficient provision, we'd be happy to restate it for you, but that's our understanding. Okay. The second issue that I had is the second issue that's been raised by the Court yesterday, and that's the question of waiver of claims. And we have two decisions. The more recent one, Perino v. FHP, states the rule that we believe is applicable to this case, which is that claims dismissed without leave to amend don't need to be restated in the amended complaint in order to not to waive them. And the rule that's stated in Perino is that, I'm sorry, what did you say, Perino states the what, the better rule? Perino states more recently than Marks the rule that would apply here. And the rule that's stated in Perino is that you do not waive. I agree with you about Perino, but don't you think Perino and Marks are inconsistent? Well, Your Honor, they appear to be, and that creates a split within a circuit, and I don't know exactly what to do about that except to say that if you drill down to all the cases cited by Marks and all the cases cited by the cases cited by Marks, you'll find that they all have to do with instances where there was leave to amend or a voluntary amendment, and so you … That wasn't true in Marks. That's correct. Marks is the – Marks says we're going to apply this to the situation that we have in this case, which is the situation where all of the – where the claims were dismissed with prejudice, without leave to amend. Now, but the cases upon which Marks relies are all cases where that was not so. All right. That's good. Now, what about the cases on which Perino relies? Well, the cases on which Perino relies are cases like the Coopers and Libran case and so forth where leave to amend had not – had not been granted or cases where there was a summary judgment dismissal. I thought the case – yeah. I thought the cases Perino relies on were all summary judgment cases, and Perino says, well, same rules should apply where there's a dismissal without leave to amend. Correct. Right? So it really cites no case that directly supports it. So in a sense, what I'm getting at is both Perino and Marks, you know, if you want to talk about the cases they depend on, the cases they cite, don't seem to have a real firm foundation, either of them. Okay. And then we get to the question of, well, what's the right rule? And I think that the right rule has to be if there is a dismissal with prejudice and without leave to amend, which was very clear on the record. You find it at ER 82 and 83 with respect to the fraud claim and ER 94 and 95 with respect to the derivative claim, unless I've got that backwards. But there's essentially a page in the district court's opinion that says, you've had multiple chances, don't you dare, you know, put this back in the complaint. And then I had to file a motion for leave to amend at the contract claim. But what does Marks say your solution in that situation is? To risk sanctions, I suppose. No, Marks says, then fine, then you should not amend and take an appeal. Right? I see. That's your remedy. Yes, Your Honor. And functionally, in a sense, we did, because what we did is we ---- That's not what you did. You accepted the court's restriction and you amended to state only a contract claim, right? We amended to state a contract theory, which was always in the facts that were alleged in the prior complaints. But that's all you ---- that's all you alleged. At the court's direction. That's correct, Your Honor. That's correct. So you did that instead of taking an appeal on your other claims? Well, if I take it ---- Maybe it was not conscious, but that's the choice you made. Well, Your Honor, I don't quite agree with that. We couldn't take an appeal on the claims because the motion to amend was pending to add the contract claims at the same time, Your Honor. So we had previously made the motion, Your Honor. It looks like I have two minutes now to address the substance of the argument. So if there are questions with respect to that, I would love to entertain them. If not, I'll do my best to get through. With the contract claim, the Supreme Court of Delaware has said very recently bylaws are contracts. They said that, but I didn't see any case where they entertain a contract claim. They use contract interpretive principles to review the bylaws. But was there ---- did I miss a case? Was there any case in which they allowed a contract, a breach of contract claim between shareholders? There's one case where what they did is they said that, and I would have to find it in the brief, Your Honor, where they said, and it's been described there, where they applied a res judicata principle. And you couldn't apply a res judicata principle without previously having recognized the claim that's going to be precluded. So it seems to me like it's got to be a contract. And they also say we apply contract interpretation principles because they're contracts. So the question comes down to, well, is there a special sort of contract in Delaware that's not enforceable by the parties to it? And there's no evidence of that. There's no case saying that. It just seems to me a foul of every principle of law. Contracts are enforceable by the parties to them. So with respect to superseding, we lay out in the reply brief what the test is and the analysis of that. And, you know, the bottom line is that the statute was not provided to supersede anything. It was just provided to give a quick, speedy summary procedure for those issues, not to say that you couldn't have some other type of remedy. The contract action is direct. The bottom line with that is every shareholder that has that right has the right to enforce it and is benefited pro rata. The corporation could also be benefited, perhaps, but that's only if the derivative claims are recognized and we win on them. With respect to fraud, issue number six, Quantum did not need to allege the defendant's state of mind with particularity. This is not a case of securities fraud, and it is not a case of a promise of some future conduct, future intent. The allegations are we have the financial wherewithal to do X today. Wasn't the issue, though, really whether it was false at the time it was stated and that wasn't alleged in the complaint? Not what they knew, but that it was false when they alleged it, not later on. They couldn't perform. Apex couldn't perform, or ABCO couldn't perform. It was alleged that they didn't perform, but it was also alleged that they knew in the amended complaint, at least. Did you allege that it was false when they stated it, I guess, is the question? Yes. And if so, where was that? I'm sure that I set that forth in the reply brief, Your Honor. Thank you. It's complaint paragraph 16, excerpt from record 128. These representations were false and individual defendants making them and or concurring with them knew or reasonably should have known that they were false at the time they were made. And that's it? That's the full statement of it? Pardon me? Yes. Okay. Thank you. Okay. Thank you. We'll hear from the other side. May it please the Court. My name is Devin Newman from Schwab, Williamson & Wyatt. I represent Appellee's K. Altman, David Browning, and ABCO Company. My co-counsel here, Mr. Trencaro from Gwendolyn Dean, represents Michael Baker and the Baker Group. In order to prepare in a cost-effective manner, Mr. Trencaro and I have split our issues. I will be addressing the following issues before the Court today, the fraudulent inducement, claims dismissal, the alternative argument that the claim was barred by the statute of limitations and plaintiff's argument raised for its first time in its reply brief that the California statute of limitations applies rather than Oregon statute of limitations of two years for the fraudulent inducement claim, and also any additional questions regarding the circuit split identified yesterday between the Marks and Perino cases. Now, if I may, I'd like to turn first to Your Honor's question about whether the statement regarding fraud, as alleged, was sufficient under 9b. And the district court correctly looked to cases like Glenfed, Yorish, and Communications Group in finding that the statement, simply that they knew at the time that those statements were fraudulent, is not sufficient under 9b, that there is particularized pleading required as to why those statements were incorrect. And the Glenfed case, in particular, finds that there was sufficient statement of fraudulent intent because the plaintiffs in that case were able to come forth with a document showing that there was not enough money or that the statements were actually conflicting, that there was a security statement that said one thing, but in the Board of Directors meetings, those directors were saying something else that conflicted with actual documents that were available at the time. And here, what plaintiff has pointed to is the fact that ABCO failed to perform, as proof that it knew at the time that it entered into the contract, that it could not perform. And the Communications Group case is very clear that if you were to agree that failure to meet a contract was evidence of fraud, then every breach of contract claim could also plead a fraudulent inducement claim. And that's not the right result here. The district court was correct in deciding that plaintiff failed to meet its 9b, particularized pleading requirements. And moving on to the statute of limitations claim, this is addressed in our brief. But the fraudulent inducement claim was essentially dead on arrival, Your Honors. Plaintiff's claim had run because plaintiff failed to file within the statute of limitations provided under ORS 12-20, which provides a two-year statute of limitations. And by the time that plaintiff pled his claim, even giving all benefits to the tolling agreement that the statute had already run on plaintiff. There's very clear evidence in the record that Mr. Dickman, and this is in the record at ER 249 to 251, that Mr. Dickman was writing in e-mails back in 2005 that he believed that ADCO was aware of the deficiencies in its promises at the time that the agreement was signed. And this case was not filed until two years after those statements, even given the full benefit of the tolling agreement. To the alternative argument that the California state of statute of limitations applies, the Oregon rule provides the uniform conflict of loss limitation. And under that analysis, it's clear that plaintiff who chose to sue in Oregon availed himself of Oregon and stated his claims under Oregon law. It was not until the issue was raised that the statute of limitations had already been told that plaintiff then decided that California law applied. But nowhere in the original complaint is it clear that he intended to assert any California law contract claim. Plaintiff relied on Oregon law the entire time. And even if the court were to reach at the third point test that the most significant relationship test applied, Oregon has the most significant relationship with the issues here. The technology is here. The motor itself is here. ADCO is here. The individual defendants are here. The only one who's residing in California is Mr. Dickman. And at the conflict of interest transaction and the shareholders meeting that's described as occurring in February of 2004, that occurred in Oregon. Mr. Dickman was here in Oregon at the time that that event transpired. With regard to the circuit split between Marks and Perino, under the Marks case the claims are waived and under the Perino case they're not. The particular circumstances of this case are more closely aligned with Marks because plaintiff did have a chance to move forward with an appeal at that time. All of the claims had been dismissed and plaintiff elected to move forward with the court's allowance to plead a breach of contract claim under Delaware law. And I must respectfully disagree with Mr. Coleman. Although the facts that plaintiff draws from to create his breach of contract claim are pled in the complaint, the idea that there was a claim under Delaware law was for the first time advanced when plaintiff filed his motion to amend for leave to add that claim. At this point I'd like to turn the argument over to my co-counsel. May it please the Court. I'm Paul Trincaro. I'd like to address the issue of the breach of bylaws claim first. And in that case there isn't a single Delaware case or case that we found in any jurisdiction that recognizes a direct cause of action between shareholders for breach of the voting provisions of bylaws. The case- There's no dispute that they did violate the bylaws, right? There would be a dispute that if this were to go to trial, there would be a dispute that they violated the bylaws. For purposes of summary judgment. For purposes of the motion to dismiss, there would be no dispute that there was a conflict of interest vote. But under the bylaws, a conflict of interest vote can be found to be valid if it is fair to the company. And in the SIC's decision in their investigation, he specifically had a finding in there that under the facts that that extension of the services agreement would have been fair to the corporation. And how is that justified? How is that justified? Yeah. Well, if the case were to go forward, and this is not part of the record, if the case were to go forward, the main asset of the company is a set of patents. When the company purchased, when APEX merged, was formed and merged with Primotive, the predecessor company that had the patents, it was represented that those patents were basically fully set and ready to go. It turns out soon after they purchased the company, there was an office action by the U.S. Patent and Trademark Office that called into question the value of these patents for that first year AB Co. Instead of going forward with what they needed to do, or in addition to going forward with what they needed to do under the services agreement, had to spend, divert a lot of resources to patent attorneys going to the U.S. Patent Office to ultimately resolve the office action in the favor of APEX and get the patents valid for the technology so that they could go out, find investors, license, and develop that technology. Because of that diversion of resources during that first year of time, it was deemed fair to the company to extend the services agreement for AB Co. so that they could go forward. One thing that is, and when you look at why there's no cases recognizing a direct cause of action between shareholders, it's not surprising because the bylaws which govern corporate governance don't actually create a direct contractual duty between shareholders. It's actually contrary to corporate law that suggests that shareholders have limited liability in the company. Especially, and in particular, the conflict of interest voting provisions are designed to protect the corporations first, shareholders second, so that if there was a violation of the conflict of interest, the injury would be to the corporation directly, the other shareholders derivatively, which segues into the second alternative grounds for affirming the district courts that these were, the breach of contract actually states a derivative rather than a direct claim. And I would direct the court's attention to the Feldman v. Kataya case, I don't know if I pronounced that correctly, that's cited in the brief, in which the court looks at a similar situation where there's equity dilution and finds it to be a derivative claim despite the fact that the plaintiff, knowing that they were going to lose standing to bring the derivative claim, tried to assert or recast the derivative claim as a direct claim in order to maintain standing after a cash-out merger. And this is a very similar case where we have a motion to dismiss that's going to wipe out all of the derivative claims, and the motion to amend to add a breach of contract claim just attempts to recast the derivative claim as a direct claim. In addition, the court dismissed all of the derivative claims on two separate bases, one that wrongful demand refusal wasn't pled with particularity, the other was that the plaintiff, Quantum Technologies, through its general partner, Barry Dickman, did not fairly and adequately represent the similarly situated shareholders, as demonstrated by the email which is in the record at ER-266-67. It's a classic. The email demonstrates that this would be a classic strike suit where a plaintiff is threatening a derivative suit in order to extort a personal monetary gain. Notably, in that email, there isn't any discussion on remedies for other shareholders. Thank you. Thank you. I think you're out of time. Would you like a minute for a bottle? Would you like a minute for a bottle? One minute. Two points. The reason why the statute of limitations wasn't addressed in our opening brief was because the district court didn't reach it. It was a summary judgment and never reached because the claim was dismissed. So in our reply brief, we addressed the statute of limitations. We had addressed the application of California law below, I believe. So with respect to the derivative claims, there's essentially two issues there, and I think we do well on both. First, there's the antagonism issue. Was Mr. Dickman's interest antagonistic to those of other shareholders in his class? The class of other shareholders is the non-defendant class of shareholders with whom his interests are exactly aligned. And then the final thing is, if you, in a close corporation, make a settlement offer to a non-party new owner, are you really restricted from being a derivative plaintiff? I thought you know. Thank you. The case is highly offensive. Mrs. Rogers.
judges: Kozinski, Tashima, Ikuta